Filed 11/4/24  P. v. Kirkpatrick CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>AARON KIRKPATRICK,<br><br>    Defendant and Appellant. | B331872<br><br>(Los Angeles County<br>Super. Ct. No. BA389227) |

APPEAL from an order of the Superior Court of Los Angeles County, H. Clay Jacke II, Judge.  Affirmed.

Jennifer A. Mannix, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Noah P. Hill and Heidi Salerno, Deputy Attorneys General, for Plaintiff and Respondent.

_____

In 2011, appellant Aaron Kirkpatrick was a member of the Black P-Stones, a Blood gang. Kirkpatrick was driving with three other Black P-Stones in the territory of a rival gang, the Rollin' 30s Harlem Crips. Kirkpatrick and the other Black P-Stones saw Kirk Torres, a member of the Rollin' 30s Harlem Crips walking around while wearing what appeared to be a thick gold chain. Kirkpatrick stopped the car and two of his passengers exited to rob Torres at gunpoint. Torres resisted and was shot and killed. In 2014, Kirkpatrick was convicted of second degree murder and sentenced to 40 years to life in prison.

In June 2019, Kirkpatrick filed a petition for resentencing under Penal Code section 1172.6.[1] The superior court denied it, finding beyond a reasonable doubt both that Kirkpatrick was guilty of aiding and abetting an implied malice murder, and that he was a major participant in the underlying felony who acted with reckless indifference to human life.

On appeal, Kirkpatrick contends that substantial evidence supports neither finding. We hold that substantial evidence supports the finding that Kirkpatrick was guilty beyond a reasonable doubt of implied malice murder, and therefore affirm without considering whether substantial evidence also supports the finding that he was a major participant in the underlying felony who acted with reckless indifference to human life.

---

[1] Undesignated statutory references are to the Penal Code. Effective June 30, 2022, section 1170.95 was renumbered as 1172.6 without substantive change. (*People v. Strong* (2022) 13 Cal.5th 698, 708, fn. 2.) For clarity, we use the current statutory numbering.

# FACTUAL AND PROCEDURAL BACKGROUND[2]

## A. *Kirkpatrick Is Convicted of Murder*

In July 2012, an information charged Kirkpatrick with murder, alleging that, in May 2011, he "did unlawfully, and with malice aforethought[,] murder KIRK TORRES." It further alleged that "a principal" personally and intentionally discharged a handgun relating to the murder, causing Torres's death, and that the crime was committed for the benefit of, at the direction of, and in association with a criminal street gang.

A jury trial began in April 2014 and lasted almost three weeks. Among those that testified was Demetri Ross, who claimed to have met Kirkpatrick in 2006 or 2007, and that he, Kirkpatrick, and Kirkpatrick's brother Keon "did everything together" and "were like a family." Ross testified that Kirkpatrick possessed several handguns, one of which was a .40 caliber, black Smith & Wesson that Kirkpatrick had nicknamed "Selena." Ross also testified that, in May 2011, Kirkpatrick had told him about an incident that occurred at an Arco gas station near Jefferson and Crenshaw Boulevards, where he, Keon, and two others were driving around in a car. They noticed two men walking down the street—one of whom was wearing a gold chain described as a "rope necklace"—and pulled into an alley behind the gas station so that two of the men in the car could get out and try to rob the men they had noticed. Two men—Keon and another—exited the vehicle and "pulled weapons" on the intended robbery victims; one of the victims "tried to fight" and was shot. Although Kirkpatrick stayed in the car, he was also armed.

---

[2] We limit our summary to the facts and procedural history relevant to the issues raised on appeal.

Kirkpatrick told Ross he had gotten rid of the firearms after the shooting. Played for the jury was a phone conversation Kirkpatrick had with Keon after Kirkpatrick had been arrested and charged with murder. During this conversation, Kirkpatrick informed Keon that "Selena" needed to take a "cold vacation." Kirkpatrick later testified that when he stated Selena needed to take a "cold vacation," he meant that Keon should "get rid of it."[3]

A police detective testified that he recovered nine cartridge casings from the scene of the shooting. A criminalist working for the Los Angeles Police Department analyzed those casings and determined they were all .40 caliber Smith & Wesson cartridge casings—three fired from one gun and six from another.

Another police officer—a gang expert—testified that he observed several "very visible" tattoos on victim Torres's body. On one arm, he had the word "Crip" and on the other, the word "Harlem." The arm tattoos were "distinctive and very large" and could be seen "from a distance." The officer testified that based on Torres's tattoos, it was "very easy" to tell that he was a member of the Rollin' 30s Harlem Crips gang.[4] The officer also testified that Kirkpatrick was a member of the Black P-Stones, a Blood gang, and that there was a rivalry between the Rollin' 30s Harlem Crips and the Black P-Stones. The gas station where the

---

[3] Kirkpatrick insisted that Selena was a "rare" "triple bea[m] scale."

[4] The prosecution played a phone conversation between Kirkpatrick and another individual in which Kirkpatrick discussed a situation he was "tripping" over and referred to it as "that crab shit." While Kirkpatrick denied that he was referring to Torres, he admitted that "Crab mean[s] Crip."

shooting occurred was "predominately populated by Rollin' 30's gang members."

Kirkpatrick testified that he had not gone and did not go to the gas station in question, because "me as a Blood, what you would say, we have certain gas stations, as do Crips. They have certain gas stations that they're willing to go to and we have certain gas stations that we're willing to go to. For a Blood to go on Jefferson and Crenshaw to a gas station, that's like a death wish."

In May 2014, a jury found Kirkpatrick guilty of second degree murder. The jury also found true the allegations that "a principal" personally and intentionally discharged a handgun, causing Torres's death, and that the crime was committed for the benefit of, at the direction of, or in association with a criminal street gang. The court sentenced Kirkpatrick to 40 years to life in prison—15 years to life for the murder and 25 years to life for the finding that a gun was used. Kirkpatrick appealed and, in 2015, we affirmed. (*People v. Kirkpatrick* (Nov. 12, 2015, B256477) [nonpub. opn.].)

### B. *Kirkpatrick Files a Resentencing Petition*

In November 2018, Kirkpatrick filed a form petition for resentencing under section 1172.6. In January 2019, the superior court appointed counsel to represent him but, in March 2019, vacated that order and instead summarily denied his petition, finding he had failed to make a prima facie showing for relief. Specifically, the superior court found that, although the jury in Kirkpatrick's trial "was instructed on felony murder and the natural and probable consequence theory of liability," it "rejected the felony murder theory because a finding of felony murder would have supported a finding of first degree murder,"

5

as "the jury was not instructed on second degree felony murder." Further, "the evidence clearly established defendant was one of two shooters and that he acted with intent to kill." Therefore, the natural and probable consequences instruction "was superfluous," and "as one of two actual killers in this case, Aaron Kirkpatrick is specifically exempted from sentencing relief."

According to an opinion we issued in July 2021, Kirkpatrick "did not file a 'notice of appeal,' challenging the order denying his section 1170.95 petition. Instead, less than three weeks after the denial, on March 19, 2019, as a self-represented litigant, he filed a petition for writ of habeas corpus in this court." (*People v. Kirkpatrick* (July 22, 2021, B302280) [nonpub. opn.] (*Kirkpatrick II*), p. 6.) One ground of his petition for writ of habeas corpus was that he was entitled to relief under section 1172.6 because his conviction was based on the natural and probable consequences theory of liability, and not based on a theory that he was an actual shooter or that he directly aided and abetted the murder. (*Id.* at pp. 6–7.) In the petition, Kirkpatrick "provided a summary of the evidence presented at trial, indicating he was not one of the men who exited the vehicle, approached Torres, and shot him." (*Id.* at p. 6.) We denied the petition for a writ of habeas corpus "without prejudice to petitioner's filing a new petition in the superior court, in accordance with and pursuant to Senate Bill No. 1437 and Penal Code section 1170.95." (*Id.* at p. 7.)

**C.** **_Kirkpatrick Files Another Resentencing Petition_**

According to our 2021 opinion, Kirkpatrick filed another petition for resentencing in June 2019. (*Kirkpatrick II, supra*, B302280, at p. 7.) In July 2019, the superior court again denied

6

it "on the same grounds it had denied appellant's first section 1170.95 petition." (*Ibid.*)

Kirkpatrick again did not file a "notice of appeal," opting instead to file another petition for a writ of habeas corpus. (*Kirkpatrick II*, *supra*, B302280, at pp. 8–9.) In December 2019, "we issued an order deeming appellant's November 18, 2019 habeas petition 'to be a motion for leave to file a belated notice of appeal,' and granting the motion." (*Id.* at p. 8.) We then reversed the superior court's denial of Kirkpatrick's petition and remanded, directing the superior court to "follow the steps outlined in section 1170.95, beginning with the appointment of counsel for appellant and briefing by the parties under section 1170.95, subdivision (c)." (*Id.* at p. 13.)

### D. *The Court Sets an Order to Show Cause*

In November 2021, the People opposed Kirkpatrick's petition, arguing that Kirkpatrick was not entitled to relief because he personally shot and killed the victim. The People cited to multiple instances in the record that they contended supported the theory that Kirkpatrick was one of the two people who shot Torres, and that Kirkpatrick was known to possess and carry the gun that killed Torres. The People also argued that, even if Kirkpatrick were not the actual killer, he was guilty of murder as a direct aider and abettor. The People argued additionally that Kirkpatrick was still liable for felony murder as the actual killer, as a person with the intent to kill, and as a major participant in the crime who acted with reckless indifference to human life. Finally, the People argued that Kirkpatrick was guilty of second degree murder with implied malice.

7

In December 2021, Kirkpatrick filed a reply, arguing that the People had conceded he had made a prima facie showing, entitling him to an evidentiary hearing, and contending that the People were no longer allowed to argue that he was guilty of charges rejected by the jury, such as first degree felony murder. Kirkpatrick also explained why the evidence from his trial was insufficient to demonstrate implied malice. The court issued an order to show cause why relief should not be granted.

### E.   *The Court Denies Kirkpatrick's Petition*

In December 2022, the court held the section 1172.6 evidentiary hearing. Neither party presented any new evidence, instead making arguments based on the existing record.

In June 2023, the court issued a memorandum of decision, denying Kirkpatrick's petition, finding him ineligible for resentencing because "he would still be convicted of murder under the current law based on either implied malice murder and/or felony-murder." As to implied malice murder, the court recognized that the People needed to prove that, acting in conscious disregard for human life, Kirkpatrick aided the commission of a life-endangering act, with knowledge that the perpetrator intended to commit that act, and knowledge that the act was dangerous to human life.

The court noted it had reviewed the "entire transcript of the trial" and the parties' filings and had considered the "thorough arguments" of counsel. The court cited to the evidence that Kirkpatrick acknowledged going to the gas station where the shooting occurred was a "death wish" because it was "heavily frequented" by members of a rival gang, and that "Black P-Stone gang members committing an armed robbery in rival gang territory was a highly dangerous situation that could result in

death." The court concluded that Kirkpatrick knew of Torres's gang affiliation, referencing Kirkpatrick's later use of the term "crab shit" to refer to him. Pointing to Kirkpatrick's instruction to dispose of "Selena," the court also found it reasonable to conclude that one of the guns used in the shooting was supplied by Kirkpatrick. The court concluded that "the evidence does demonstrate beyond a reasonable doubt that Petitioner was a direct aider and abettor who acted with implied malice."

Kirkpatrick timely appealed.

## DISCUSSION

" '[T]o be liable for an implied malice murder, the direct aider and abettor must, by words or conduct, aid the commission of the life-endangering *act*, not the result of that act. The mens rea, which must be personally harbored by the direct aider and abettor, is knowledge that the perpetrator intended to commit *the act*, intent to aid the perpetrator in the commission of *the act*, knowledge that *the act* is dangerous to human life, and acting in conscious disregard for human life.' " (*People v. Reyes* (2023) 14 Cal.5th 981, 991.)

Kirkpatrick does not dispute the law. Nor does he dispute that substantial evidence supports a finding that he drove himself and three fellow gang members into rival gang territory, that they decided to rob a rival gang member at gunpoint (although Kirkpatrick does dispute whether he knew the victim was a rival gang member when he decided to rob him), and that Kirkpatrick supplied one of the guns used in the shooting. Instead, he argues that substantial evidence does not support a finding that he aided and abetted a life-endangering act because: (a) the act he aided and abetted was robbery, not murder, and

9

armed robbery does not involve a "high degree of probability that [the act] will result in death"; and (b) much of the gang evidence admitted during trial would be inadmissible following the changes to Penal Code section 186.22, and thus the court erred by relying on it.

"Where the trial court's decision on review is predominantly a question of fact, the appellate court reviews the record for substantial evidence." (*People v. Underwood* (2024) 99 Cal.App.5th 303, 314.) We conclude substantial evidence supports the court's finding Kirkpatrick guilty of implied malice murder.

## A. *Kirkpatrick Too Narrowly Frames the "Act"*

As our high court has instructed, "To suffice for implied malice murder, the defendant's act must not merely be dangerous to life in some vague or speculative sense; it must ' "involve[] a high degree of probability that it will result in death." ' " (*Reyes, supra*, 14 Cal.5th at p. 989.) Kirkpatrick contends that this bar was unmet because the act he aided was armed robbery, and that "[m]ost armed robberies do not result in death." (See *In re Scoggins* (2020) 9 Cal.5th 667, 682 [" 'roughly 1 in 200 [armed robberies] results in death' " but "that fact, without more, does not establish reckless indifference to human life"].) We conclude that by framing the act he aided as mere "armed robbery," Kirkpatrick ignores the "more."

Kirkpatrick drove three fellow gang members into rival gang territory, an action that he testified was akin to a "death wish." Then, he and his fellow gang members saw a rival gang

member and decided to rob him at gunpoint.[5]  Additionally, substantial evidence supports a finding that Kirkpatrick had been in possession of a .40 caliber, Smith & Wesson handgun that he had named "Selena."  Nine cartridge casings from the scene of the shooting were identified as .40 caliber Smith & Wesson cartridge casings.  After Kirkpatrick was arrested for murder, he instructed Keon to get rid of Selena, which leads to the reasonable inference that Selena was one of the guns used in the shooting.

In other words, the act we consider is not an armed robbery "without more," but an armed robbery of a rival gang member in that rival gang member's territory.  Considering that Kirkpatrick admitted that even *going* to the gas station where the robbery took place—let alone trying to rob a rival gang member there—constituted a "death wish," we conclude that substantial evidence supports the superior court's finding that Kirkpatrick aided and abetted an act that involves " ' "a high degree of probability that

---

[5] Kirkpatrick claims there is no evidence that he knew Torres was part of a rival gang.  But a gang expert testified that Torres sported some "very visible" tattoos proclaiming his affiliation with the Crips, and that it was "very easy" to tell that he was a member of the Rollin' 30s Harlem Crips gang.

Kirkpatrick claims these tattoos were covered by a "long sleeve hoodie" but the record he cites to support this claim is a single piece of witness testimony where the witness stated that he believed Torres was wearing a "dark hoodie" at the time of the shooting.  There was no testimony about sleeves or tattoo visibility.  Torres's mother testified that when she last saw Torres—the day of the shooting—he was wearing a "dark shirt."

11

it will result in death." ' " (*Reyes*, *supra*, 14 Cal.5th at p. 989.[6])
As such, the court did not err in finding Kirkpatrick liable for
implied malice murder.

### B. *The Gang Evidence Necessary to Support Implied Malice Is Not Precluded*

Kirkpatrick also contends that "most of the gang evidence
admitted during appellant's trial would not be admissible if
appellant was tried following changes to Penal Code section
186.22" and thus the court erred by relying on it.

Kirkpatrick fails to provide cogent argument or legal
authority to support his contention. As such, it is forfeited. (See
*WFG National Title Ins. Co. v. Wells Fargo Bank, N.A.* (2020) 51
Cal.App.5th 881, 894 ["appellant must supply the reviewing court
with some cogent argument supported by legal analysis"; "we
may disregard conclusory arguments that are not supported by
pertinent legal authority"].)

---

[6] Thus, Kirkpatrick's reliance on *Reyes* is misplaced. There,
a fellow gang member showed the defendant that he was carrying
a revolver. (*Reyes*, *supra*, 14 Cal.5th at p. 985.) The defendant
and several fellow gang members then rode their bicycles "to an
area on the edge of territory belonging to a rival gang." (*Ibid.*)
Once there, the armed member shot someone driving by in a car.
(*Ibid.*) Our high court found that while "[i]t may have been
likely" that bicycling to the edge of territory belonging to a rival
gang "would result in some sort of gang confrontation, and it is
possible that someone would get hurt or killed. . . , the act does
not by itself give rise to a high degree of probability that death
will result." (*Id.* at p. 989.) Here, by contrast, Kirkpatrick drove
into rival gang territory and supplied a gun to a fellow gang
member to commit armed robbery on a rival gang member.

12

Were we to consider Kirkpatrick's argument, we would reject it. Section 186.22 requires that, in proving that a felony was committed "for the benefit of . . . a criminal street gang," the benefit proved must be "more than reputational." (§ 186.22, subds. (b)(1) & (g).) However, one example given of a more-than-reputational benefit is "targeting a perceived or actual gang rival," which occurred here. (§ 186.22, subd. (g).) Moreover, even if section 186.22 renders evidence about the reputational benefits from a felony inadmissible for purposes of proving a gang enhancement, we are aware of no authority that renders such evidence inadmissible to prove implied malice. Therefore, the court did not err in considering the gang expert's testimony.

## DISPOSITION

The superior court's order denying Kirkpatrick's petition is affirmed.

NOT TO BE PUBLISHED

KLINE, J.[*]

We concur:

ROTHSCHILD, P. J.                    WEINGART, J.

---

[*]Retired Justice of the California Court of Appeal, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

13